**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**YOHNNAIKER LIVARDO PACHECO,**

**Petitioner,**

**v.** **Case No. 2:26cv451**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is an Amended Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 8. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons explained below, the undersigned **RECOMMENDS** that the Petition, ECF No. 8, be **GRANTED IN PART**, and **DENIED IN PART** and that Petitioner be given a bond hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Yohnnaiker Livardo Pacheco originally filed a pro se Petition for a Writ of Habeas Corpus. ECF No. 1. On June 15, 2026, Petitioner, through counsel, filed an Amended Petition seeking release from ICE custody or a fair bond hearing before an Immigration Judge ("IJ"). ECF No. 8. Petitioner was taken into immigration custody on October 15, 2025, and is currently housed at Farmville Detention Center, located in the Eastern District of Virginia. *See id.* at ¶ ¶ 1, 48.

*1. Petitioner's Immigration History*

Petitioner is a citizen of Venezuela. *Id.* at ¶ 43. He entered the United States through the border in Ciudad Juarez, Mexico, on or about October 7, 2023. *Id.* at ¶¶ 45, 46. After entering the United States, Respondents issued Petitioner a Notice to Appear ("NTA") which found that Petitioner "demonstrated a credible fear of persecution or torture," that Petitioner is "an alien present in the United States who has not been admitted or parole" and upon entry, was "not then admitted or paroled after inspection by an Immigration Officer." *Id.* at ¶ 46. Petitioner was issued an Interim Notice Authorizing Parole, which was valid for one year. *Id.* at ¶ 46; ECF No 8, attach. 4 (Interim Notice of Parole). Petitioner resided in the state of Maryland until ICE detained him on October 15, 2025. ECF No. 8 at ¶¶ 47, 48. He has been detained at Farmville Detention Center since then. *Id.* at ¶ 48.

On October 17, 2025, Respondents issued Petitioner a second NTA, charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), and he was placed in removal proceedings. *Id.* at ¶¶ 49, 50. Petitioner filed an Application for Asylum and Withholding of Removal on January 28, 2026. *Id.* at ¶ 50. An IJ denied Petitioner's application on March 17, 2026. *Id.* Petitioner appealed, and his appeal remains pending with the Board of Immigration Appeals. *Id.* at ¶ 50. Petitioner has never been convicted of a crime. *Id.* at ¶ 1.

*2. Procedural History of the Instant Habeas Petition*

The Amended Petition alleges four counts for relief: (1) Violation of the Immigration and Nationality Act ("INA"); (2) Violation of the Administrative Procedure Act; (3) Violation of Substantive Due Process; and (4) Violation of Procedural Due Process. *Id.* at ¶¶ 52-82. The Amended Petition requests that the Court issue a writ of habeas corpus and require that

Respondents release Petitioner immediately or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at 29–30.

Respondents filed a response in opposition to the Petition on June 22, 2026. ECF No. 11. In their opposition, Respondents submit that his case is different from other recently filed and adjudicated cases in this district because Petitioner was placed in expedited removal proceedings just after his entry into the United States, received a positive credible fear finding and was issued parole, but was never placed in removal proceedings because the NTA was not filed with the Immigration Court. *Id.* at 2. Based on these circumstances, Respondents contend Petitioner is subject to mandatory detention pursuant to § 1225(b)(2). *Id.* Respondents further acknowledge that the Court rejected a similar argument in *Alamshoev v. Crawford et al.*, and given the Court's reasoning in that case, ask that the Court incorporate filings from *Alamshoev, Ceba Cinta*, and *Duarte Escobar*, into the record of this case. *Id.* at 3. They further ask that rather than release Petitioner from custody, the Court order a bond hearing at which Petitioner bears the burden to establish that he is not a danger to property or person and that he is likely to appear at all future proceedings. *Id.* at 3 n.2.

In reply, Petitioner argues that Respondents failed to meaningfully respond to the Petition and should be required to address Petitioner's specific factual and legal contentions. ECF No. 12 at 3–5. Petitioner also argues that he is not subject to mandatory detention because both NTAs characterize him as "an alien *present* in the United States who has not been admitted or paroled" and DHS decided to parole Petitioner into the United States and release him from custody. *Id.* at 5 (citations omitted).

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted). After considering the response to a habeas petition, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### *1. Legal Framework*

The INA establishes the statutory framework that governs aliens who are detained upon arrival into the United States and those already present in the country.[1] *Abreu v. Crawford*, No. 1:24-cv-01782, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025), *appeal dismissed*, No. 25-6174, 2025 WL 2604455 (4th Cir. Apr. 22, 2025). That framework distinguishes between 8 U.S.C. § 1225, applicable to "noncitizens who are detained *upon arrival* into the United States," and 8 U.S.C. § 1226, applicable to individuals who "have *already entered* the country, legally or otherwise." *Id.*

Pursuant to § 1225(a), an alien detained *upon arrival* into the United States is defined as an "applicant for admission." 8 U.S.C. § 1225(a). The INA distinguishes between two categories of applicants for admission. *Id.* First, § 1225(b)(1) applies to "aliens initially determined to be

[1] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General at his discretion." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing § 1225(b)(1)(A)(i) and § 1225(b)(1)(A)(iii)). Aliens who fall into § 1225(b)(1) are generally removed pursuant to an expedited removal process, unless they indicate either an intent to apply for asylum or a fear of persecution. § 1225(b)(1)(A)–(B). They are subject to mandatory detention while they await expedited removal, or while their asylum application is pending. § 1225(b)(1)(B)(ii), (iii)(IV). Second, § 1225(b)(2) is a "catchall provision," applying to "all applicants for admission not covered by § 1225(b)(1)" who are "seeking admission." *Jennings*, 583 U.S. at 287 (citing § 1225(b)(2)(A), (B)). Aliens who fall into § 1225(b)(2)(A) are subject to mandatory detention "if the examining officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A) (emphasis added).

Pursuant to § 1226(a), an alien who has *already entered* the country may be detained or released on bond pending a removal decision. Detention under § 1226(a) is discretionary; the Attorney General may continue to detain the alien or "may release the alien" on bond or conditional parole.[2] § 1226(a)(1)–(2). Aliens detained under § 1226(a) "are entitled to a bond hearing before an [Immigration Judge] at any time before entry of a final removal order." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 652 (E.D. Va. 2025) (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025)).

Over the last year, Respondents have argued in federal courts throughout the country that an individual who has already entered the country is subject to mandatory detention under §

[2] Irrelevant to the instant Petition, certain aliens are not entitled to release under § 1226(a), including those who "fall into one of several enumerated categories involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 289 (citing § 1226(c)(1)).

1225(b)(2), rather than discretionary detention under § 1226(a) and their argument has generally been rejected by numerous courts within this jurisdiction and around the country. *See, e.g.*, *Quispe v. Crawford*, No. 1:25-cv-1471, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) (citing cases); *Ceba Cinta v. Noem*, No. 1:25-cv-1818, 2025 WL 4053171, at *2 (E.D. Va. Oct. 29, 2025); *Duarte Escobar v. Perry*, No. 3:25cv758, 2025 WL 3006742, at *13 (E.D. Va. Oct. 27, 2025).[3] Indeed, there is currently a circuit split on this issue. *Compare Da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026); *Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1285 (11th Cir. 2026); *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), *with Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Herrera Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). Respondents' position that individuals who are already present in the country are subject to detention under § 1225 "reflects DHS's novel interpretation of decades-old immigration detention statutes which . . . is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction." *Ceba Cinta*, 2025 WL 4053171, at *2 (citing cases).

*2. Analysis*

In light of the above legal framework, the Court makes the following findings:

[3] *See also Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (supplying an appendix of "at least 350 [] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States" where challengers to "the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed" have prevailed).

First, the Court finds that Petitioner is detained pursuant to § 1226(a). As courts in this district and around the country have overwhelmingly held, under the INA, the mandatory detention provision in § 1225(b)(2)(A) extends to "applicants for admission" who are "seeking admission." *See, e.g.*, *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 575 (E.D. Va. 2025); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *12 (S.D.W. Va. Feb. 4, 2026) (finding that "[i]t is not enough to be an 'applicant for admission,' under §1225(b)(2)(A), an alien also must be 'seeking admission'"). This conclusion is supported by the plain text of the INA, Supreme Court precedent, district court decisions throughout the country, and decades of practice. *Duarte Escobar*, 807 F. Supp. 3d at 575–81.

Respondents argue that the instant Petition should be treated differently than others recently adjudicated in this court because "[u]nlike the petitioner in *Duarte Escobar*, Petitioner was apprehended just after his illegal entry into the United States[,]" "placed in expedited removal proceedings pursuant to 8 U.S.C. §1225(b)(1), received a positive credible fear finding, and was issued parole," but "was never placed in removal proceedings because the [NTA] issued to him at that time was not then filed with the Immigration Court." ECF No. 11 at 2. They contend that based on these circumstances, "Petitioner has not been admitted nor 'effected an entry,' into the United States and is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)."[4] *Id.*

---

[4] At Respondents' request, the Court incorporates the filings from *Alamshoev*, *Ceba Cinta*, and *Duarte Escobar* into the record of this case. *See* ECF No. 11; *Alamshoev v. Crawford et al.*, No. 2:26cv230, 2026 WL 1459676 (E.D. Va. Apr. 3, 2026); Ceba Cinta v. Noem, No. 1:25-CV-1818, 2025 WL 4053171 (E.D. Va. Oct. 29, 2025); *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 575 (E.D. Va. 2025). The Court incorporates these filings over Petitioner's objection. ECF No. 12 at 3–5. Petitioner asked that the Court order Respondents to file an answer that complies with Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts. *Id.* Requiring Respondents to provide an answer that comports with Rule 5(b) would unnecessarily expend judicial resources and delay Petitioner the relief he is entitled to. For the same reasons, the Court does not find it necessary to address Petitioner's specific arguments in Count II of the Amended Petition regarding violations of the Administrative Procedures Act. *Cf. Martinez v. Lyons*, No. 3:25cv1021, 2026 WL 1257330, at *3 (E.D. Va. May 7, 2026) (declining to address petitioner's allegations of violations of the APA because the court was equipped to grant relief based on violations of the INA).

However, where due process is concerned, the operative question is whether Petitioner was already present and "rediscovered" in the United States at the time he was detained. *Gomez Villalobos v. Crawford*, No. 2:26CV12, 2026 WL 1165576, at *5 (E.D. Va. Apr. 29, 2026). Even if Petitioner was subject to detention under 1225(b), the "legal fiction" of non-presence "ends when a petitioner has enjoyed years of *post-parole* presence." *Id.* Here, following his release on parole, Petitioner was present in the United States for approximately two years before ICE detained him. That presence "affords him some basic procedural due process rights" in the "form of a full and fair hearing under § 1226(a) to determine the propriety of his continued detention." *Id.* Moreover, even if Petitioner could be considered an applicant for admission, he was not "seeking admission" at the time he was detained in 2025. *See Briceno Solano*, 2026 WL 311624, at *12 (explaining that "when read together, the use of the verb 'seeking' in § 1225(b)(2)(A) 'denotes an active and present effort,' such that 'an alien seeking admission is a noncitizen who, at the time of his arrest, is actively and *presently* pursuing inspection and authorization by an immigration officer to lawfully enter the United States.'") (emphasis added (internal quotations and citation removed)).

For these reasons, the Court finds that Petitioner is detained pursuant to § 1226(a). Because Petitioner is detained pursuant to § 1226(a), Petitioner's continued detention without a bond hearing before an Immigration Judge is unlawful, and habeas relief is warranted. *See* 28 U.S.C. § 2241(c)(3).

Second, because Petitioner is detained pursuant to § 1226(a), he is governed by the discretionary detention provisions set forth in that statute. Under § 1226(a) and its implementing regulations, Petitioner is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether Petitioner is a danger to the community and whether he is a flight risk.

Third, for the reasons explained in *Avelar Ramos v. Bondi*, the Court finds that the appropriate relief in this matter is ordering that Petitioner receive a bond hearing before an Immigration Judge, and that the Respondents carry the burden of proof at that bond hearing. No. 3:26-cv-112, 2026 WL 614875, at *5–9 (E.D. Va. Mar. 4, 2026). Petitioner has not yet had a bond hearing where his release was considered, so a bond hearing, rather than immediate release, is the appropriate remedy. *See Bautista Villanueva v. Bondi*, No. 25-cv-4152, 2026 WL 100595, at *2 (D. Md. Jan. 14, 2026) (finding that absent any indication that the immigration judge will fail to apply the correct legal standards for bond hearings pursuant to § 1226, the appropriate remedy is a bond hearing). Additionally, "given Respondents' abject denial of [Petitioner's] entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement." *Avelar*, 2026 WL 614875, at *5–9. Thus, the appropriate remedy for Respondents' statutory violation is for Petitioner to receive a bond hearing before an Immigration Judge, during which Respondents will bear the burden of showing whether Petitioner is a danger or a flight risk by clear and convincing evidence.[5]

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Amended Petition, ECF No. 8, be **GRANTED IN PART**, to the extent Petitioner seeks a bond hearing, but **DENIED IN PART** to the extent he seeks his immediate release.

The Court further **RECOMMENDS** that:

---

[5] In their opposition, Respondents note that Petitioner correctly named Jeffrey Crawford as his actual custodian but erred in "*only*" naming that custodian. ECF No. 11 at 1 n.1. In his reply, Petitioner explains that he named his immediate custodian, as well as the relevant federal officials with legal authority over immigration detention and custody determinations. ECF No. 12 at 4 n.5. Respondents do not attempt to dispute Petitioner's correction, so the Court assumes that Petitioner properly named the Respondents in this action. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining that "the proper respondent to a habeas petition is the person who has custody over the petitioner") (cleaned up).

- Respondents provide Petitioner a fair bond hearing by an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within **FIVE DAYS** of entry of a final order in this matter;
- Respondents provide Petitioner in-person notice of the date and time of his bond hearing at least **THREE DAYS** before the hearing;
- Respondents **SHALL** bear the burden of showing that Petitioner is a danger or a flight risk by clear and convincing evidence at that bond hearing;
- Respondents be **ENJOINED** from denying bond to Petitioner on the grounds that he is detained pursuant to 8 U.S.C. § 1225(b)(2);
- Respondents **SHALL** file a status report with the Court within **THREE DAYS** of Petitioner's bond hearing, which shall explain whether Petitioner has been granted bond, and if his request for bond was denied, the reasons for that denial; and simply stating that Petitioner's request for bond was denied because he was deemed a "flight risk" or a "danger to the community," without more, is insufficient;
- in the event Petitioner is released on bond by an Immigration Judge, Respondents be **ENJOINED** from invoking the automatic stay provision of 8 C.F.R. § 1003.19(i)(2)[6]; and
- in the event Petitioner is released on bond by an Immigration Judge, Respondents be **ENJOINED** from rearresting Petitioner unless: (1) he has committed a new violation of any federal, state, or local law; (2) he has failed to attend any properly noticed immigration or court hearing; (3) he is subject to an administratively final removal order pursuant to § 1231; or (4) an Immigration Court affirmatively concludes that Petitioner

---

[6] *See Hasan*, 800 F. Supp. 3d at 657–61 (explaining the automatic stay provision in 8 C.F.R. § 1003.19(i)(2) and finding that it "constitutes an unequivocal violation of due process").

is subject to mandatory detention under § 1226(c) through a proper Immigration Court proceeding.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 31, 2026